No. 5:04-CR-00356-F-1
No. 5:10-CV-00445-F

| | |
|---|---|
| MARVIN WILBERT POWELL, | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

O R D E R

This matter is before the court on the Government's Motion to Dismiss [DE-88] and

Motion to Dismiss or, in the alternative, for Summary Judgment [DE-108] Marvin Wilbert

Powell's pending Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255

[DE-84]. Also before the court are Powell's Motion to Supplement [DE-91], Motion for

Summary Judgment [DE-92], and Motion for Default Judgment [DE-101]. The issues have been

fully briefed, and the matter is now ripe for ruling. For the reasons more fully stated below,

Powell is not entitled to relief on his section 2255 motion. The Government's Motions to

Dismiss are ALLOWED in part and DENIED in part, Powell's Motion to Supplement is

ALLOWED, Powell's Motion for Default Judgment is DENIED, and Powell's Motion for

Summary Judgment is DENIED.

**Factual and Procedural Background**

Powell was originally charged in a two-count indictment. *See* Indictment [DE-1]. On

February 23, 2005, Powell was charged in a five-count superseding indictment. *See* Superseding

Indictment [DE-10]. In Count One of the Superseding Indictment, Powell was charged with

aiding and abetting another in possession with intent to distribute 50 grams or more of cocaine

base (crack) and a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count Two charged Powell with conspiracy to possess with intent to distribute more than 50 grams of cocaine base (crack) and a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1). In Count Three, Powell was charged with possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). Count Four charged Powell with being a felon in possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). In Count Five, Powell was charged with being a felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924.

Powell's arraignment was held on June 13, 2005. At his arraignment, Powell pled not guilty to the Superseding Indictment and exercised his right to a jury trial. Following a three-day jury trial, Powell was found guilty on all five counts of the Superseding Indictment.

On January 18, 2006, the court held Powell's sentencing hearing. On Counts One and Two, Powell was sentenced to 240 months' imprisonment as to each count, and the sentences were ordered to run concurrently. *See* Judgment [DE-50]. On Count Three, Powell was sentenced to 60 months' imprisonment, and the sentence was ordered to run concurrently with the sentences imposed in Counts One and Two. On Count Four, Powell was sentenced to 60 months' imprisonment, and the sentence was ordered to run consecutive to the sentence imposed in Count One. On Count Five, Powell was sentenced to 120 months' imprisonment, and the sentence was ordered to run concurrently with the sentences imposed in Counts One, Two and Three.

Powell filed a Notice of Appeal [DE-51] on January 27, 2006. In an unpublished opinion [DE-53], the Fourth Circuit Court of Appeals affirmed Powell's sentence. The United States

2

Supreme Court vacated Powell's judgment and remanded the matter for reconsideration in light of *Kimbrough v. United States*, 552 U.S. 85 (2007) (providing a district court with greater discretion in sentencing certain drug offenses).

On May 28, 2008, Powell was resentenced. *See* Amended Judgment [DE-71]. The total sentence imposed was 300 months' imprisonment and was structured as follows: Powell was sentenced to 240 months' imprisonment on Counts One and Two. On Count Three, Powell was sentenced to 60 months' imprisonment, and the sentence was ordered to run concurrently with the sentences imposed for Counts One, Two and Five. Powell was sentenced to 60 months' imprisonment on Count Four, and the sentence was ordered to run consecutive to the sentences imposed in Counts One, Two, Three and Five. Powell was sentenced to 120 months' imprisonment on Count Five, and the sentence was ordered to run concurrently with the sentences imposed in Counts One, Two and Three.

Powell filed a Notice of Appeal [DE-69] on June 4, 2008. In an unpublished opinion [DE-77], the Fourth Circuit Court of Appeals affirmed the judgment of this court. The United States Supreme Court denied certiorari.

On October 14, 2010, Powell filed the instant Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [DE-84]. In his section 2255 motion, Powell argues that he is entitled to relief on the following grounds: (1) his attorney provided ineffective assistance of counsel when she failed to file a motion to dismiss for prejudicial pre-indictment delay; (2) his attorney provided ineffective assistance of counsel when she failed to convey all of the Government's plea offers; (3) his attorney provided ineffective assistance of counsel when she failed to thoroughly investigate Bernard Lynch's criminal record; (4) his attorney provided

3

ineffective assistance of counsel when she failed to file a motion to suppress; (5) his attorney provided ineffective assistance of counsel when she failed to request a limiting instruction; (6) his attorney provided ineffective assistance of counsel when she failed to file a motion to sever Count Five from the indictment; (7) his attorney provided ineffective assistance of counsel when she failed to have a biased juror removed; (8) his attorney provided ineffective assistance of counsel when she failed to object to the introduction of Government's Exhibit 71; (9) his attorney provided ineffective assistance of counsel when she failed to object to prosecutorial misconduct; (10) his attorney provided ineffective assistance of counsel when she failed to request a lesser included offense instruction; (11) his attorney provided ineffective assistance of counsel when she failed to properly object to relevant conduct and present evidence to show that the quantities of cocaine base and powder cocaine used to calculate his sentence were not accurate and were based on unreliable evidence; (12) his Fifth Amendment rights to due process were violated due to prosecutorial misconduct and prejudicial pre-indictment delay; (13) his Fifth Amendment rights to due process were violated when the Government committed a *Brady* violation by failing to disclose evidence showing that Bernard Lynch's prior felony convictions were admissible under Rule 609 of the Federal Rules of Evidence; (14) the Government engaged in prosecutorial misconduct and *Brady* violations by failing to disclose that Bernard Lynch was compensated by the Government, and the Government agreed to be lenient in Lynch's case; (15) the Government engaged in prosecutorial misconduct by introducing the rap portion of Government's Exhibit 71 and using its content as the basis for argument; and (16) the court erred in sentencing him to a consecutive 60-month sentence as a result of his conviction pursuant to 18 U.S.C. § 924(c)(1).

4

As noted, the Government has filed a Motion to Dismiss [DE-88] and a Motion to Dismiss or, in the alternative, for Summary Judgment [DE-108]. In its original Motion to Dismiss, the Government argues that dismissal is warranted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Powell has failed to state a claim upon which relief can be granted. In its Motion to Dismiss or, in the alterative, for Summary Judgment, the Government argues that Powell's section 2255 motion should be dismissed for failure to state a claim or, in the alternative, the court should grant summary judgment in favor of the Government.

## Legal Standards

### I.    Rule 12(b)(6) Motion to Dismiss

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved which is consistent with the complaint's allegations. *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'shp*, 213 F.3d 175, 180 (4th Cir. 2000). However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level'" and the plaintiff must allege "'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted);

5

*accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts.*, 213 F.3d at 180.

## II.    Motion for Summary Judgment

Summary judgment is appropriate where there is no genuine issue of material fact and it appears that the moving party is entitled to judgment as a matter of law. *United States v. Lee*, 943 F.2d 366, 368 (4th Cir. 1991) (applying the summary judgment standard to a motion to vacate). Any permissible inferences which are drawn from the underlying facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Summary judgment is appropriate when the record taken as a whole could not lead a trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## Discussion

## I.    Section 2255 Motion

### A.    Powell's Ineffective Assistance of Counsel Claims

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The petitioner bears the burden of proof as to both prongs of the *Strickland* standard. *United States v. Luck*, 611 F.3d 183, 186 (4th Cir. 2010). Under the first prong, the petitioner must show that counsel's representation "fell below an objective standard of reasonableness" as measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688. There is "a strong presumption that counsel's

6

conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. As to the second prong, the petitioner must demonstrate that counsel's inadequate performance prejudiced him. *Id.* at 687. Therefore, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id.* With the *Strickland* standard in mind, the court will address each of Powell's ineffective assistance of counsel claims in turn.

## 1. Powell Has Failed to Sufficiently Allege Ineffective Assistance of Counsel in Claims One, Three, Four, Five, Six, Seven, Eight, Nine, Ten and Eleven.

### a. Failed to file a motion to dismiss for pre-indictment delay

In his first claim, Powell alleges that his attorney provided ineffective assistance of counsel by failing to file a motion to dismiss for prejudicial pre-indictment delay. [DE-84] at 5-43. Powell contends that his attorney's failure to file a motion to dismiss was deficient performance because she was aware that the Government was attempting to circumvent the rules requiring a timely indictment. *Id.* at 16.

"'[T]he Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to [defendant's] right[ ] to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused.'" *United States v. Shealey*, 641 F.3d 627, 633 (4th Cir. 2011) (quoting *United States v. Marion*, 404 U.S. 307, 324 (1971)). The Fourth Circuit employs a two-part test to determine whether pre-indictment delay rises to the level of violating a defendant's due process rights. *United States v. Uribe-Rios*, 558 F.3d 347, 358 (4th Cir. 2009)

7

(citing *United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 403 (4th Cir. 1985)). First, a defendant must establish that the delay caused him to suffer "actual prejudice." *Id.* This is a heavy burden because it requires the defendant to show that he was "meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely affected." *Jones v. Angelone*, 94 F.3d 900, 907 (4th Cir. 1996). Second, if the initial requirement is met, the court then considers the government's reasons for delay. *Uribe-Rios*, 558 F.3d at 358. The consideration is whether the government's prosecution after substantial delay violates fundamental concepts of justice or the community's sense of fair play and decency. *United States v. Lovasco*, 431 U.S. 783, 790 (1977).

Just a few days before Powell's trial started, his attorney filed a Notice [DE-23] of intent to use Bernard Lynch's convictions in excess of ten years.[1] The following convictions were at issue: (1) January 4, 1994 conviction for PWISD cocaine; (2) January 4, 1994 conviction for possession of cocaine; (3) November 23, 1993 conviction for possessing paraphernalia; and (4) November 23, 1993 conviction for second degree trespass. During Powell's trial, the admissibility of these convictions was addressed on the record. *See* June 17, 2005 Transcript [DE-124] at 2-5. The court noted that Lynch's convictions were older than ten years and held that the convictions would not be admissible.[2] *Id.* at 3-5.

---

[1]The Government's witness Bernard Junior Lynch was involved in a related case, 5:03-CR-255-FL-1. On February 17, 2004, Lynch pled guilty to conspiracy to possess with intent to distribute cocaine base (crack). Lynch was sentenced to 135 months' imprisonment.

[2]Rule 609 of the Federal Rules of Evidence sets forth the rules for the use of a prior conviction to attack a witness's credibility. Rule 609(b) restricts admission by providing that evidence of a prior conviction over ten years old is not admissible unless its probative value substantially outweighs the prejudicial effect. Fed. R. Evid. 609(b); *United States v. Williams*, 376 Fed. Appx. 350, 351-52 (4th Cir. 2010).

8

The court concludes that Powell cannot show that the pre-indictment delay in this case caused him "actual prejudice." Admittedly, Powell's attorney could not impeach Lynch with the above-stated convictions, but the record reveals that Powell's attorney was otherwise successful in impeaching Lynch's credibility. For instance, when Lynch testified, Powell's attorney pointed out that Lynch was serving a federal prison sentence. *See* June 20, 2005 Transcript [DE-125-1] at 169. Powell's attorney also got Lynch to concede that he was motivated to get his own sentence reduced. *Id.* at 169-70. In response to the questions of Powell's attorney, Lynch admitted that he had a history of selling drugs, even at work. *Id.* at 174-75. Lynch also admitted he lied on more than one occasion to law enforcement during their investigation of Powell's case. *Id.* at 176. Finally, Powell's attorney specifically asked Lynch if he had been convicted of any crimes for fraudulent or false information within the last ten years. *Id.* at 179. Lynch denied that he had, and Powell's attorney discredited Lynch by pointing out that he had been charged and convicted for fraudulent telephone credit. *Id.* at 179-80.

The court further concludes that the delay in this case does not violate fundamental concepts of justice or the community's sense of fair play and decency. A review of the record reveals that the offense conduct at issue in Powell's case occurred on or about May 14, 2003. The Indictment was filed on November 10, 2004, and the Superseding Indictment was filed on February 23, 2005. There was some delay in the case between the time of the criminal activity and the actual filing of an indictment and superseding indictment, but courts within the Fourth Circuit have found that cases involving a much longer delay were not entitled to dismissal. *See, e.g., Ging-Hwang Tsoa,* No. 1:13cr137, 2013 WL 6145664, at *2 (E.D.Va. Nov. 20, 2013) (finding dismissal was not warranted where the indictment arose nearly seven years after the

9

alleged criminal conduct); *United States v. Yanhua Gao*, No. 1:13cr287, 2013 WL 5504406, at *2 (E.D.Va. Oct. 1, 2013) (finding dismissal was not warranted where the indictment arose nearly ten years after the alleged criminal conduct). For these reasons, the court concludes that Powell's attorney would not have been successful with a motion to dismiss based upon pre-indictment delay.

Because a motion to dismiss for pre-indictment delay would not have been successful in this case, the court finds that Powell's attorney was well within the range of professionally competent assistance in not filing a motion to dismiss. *See Moore v. United States*, 934 F. Supp 724, 731 (E.D.Va. 1996) (holding that failure to raise a meritless argument can never amount to ineffective assistance). Accordingly, Powell has failed to state a claim under *Strickland*, and his first claim must fail.

**b. Failed to investigate Lynch's criminal record**

In his third claim, Powell alleges that his attorney provided ineffective assistance of counsel by failing to thoroughly investigate Bernard Lynch's criminal record. [DE-84] at 56-76. Powell argues that if his attorney had done an investigation into Lynch's record, she would have been able to provide the court with enough information that the court would not have barred the use of Lynch's prior convictions. *Id.* at 66-67. Powell concludes that if his attorney had been able to impeach Lynch with the prior convictions, there is a reasonable probability that the outcome of his trial would have been different. *Id.* at 68-69.

This claim must fail under *Strickland* because Powell has not adequately alleged prejudice. Specifically, the court finds that there was a great deal of information before the jury which discredited Lynch. For instance, on direct examination the prosecutor elicited from Lynch

10

that at the time of Powell's trial, Lynch was incarcerated after having pled guilty to possession with intent to sell crack cocaine. *See* June 20, 2005 Transcript [DE-125-1] at 93. Lynch also testified that he lied to law enforcement officers at the time of his arrest. *Id.* at p. 128. On cross examination, Lynch was further discredited by Powell's attorney. As noted above, Powell's attorney got Lynch to concede that he was presently serving a federal prison sentence (*Id.* at 169); he was motivated to get his sentence reduced (*Id.* at 169-70); he had a history of selling drugs (*Id.* at 174-75); he lied to law enforcement on more than one occasion during the investigation of Powell's case (*Id.* at 176); and he had a 1995 conviction for fraudulent telephone credit (*Id.* at 179-80). Given that the jury was presented with this plethora of evidence discrediting Lynch, the court cannot find that Powell has sufficiently alleged prejudice resulting from his attorney's failure to successfully introduce evidence of Lynch's prior convictions. Consequently, this ineffective assistance of counsel claim lacks merit.

### c. Failed to file a motion to suppress

Powell alleges in his fourth claim that his attorney provided ineffective assistance of counsel by failing to file a motion to suppress evidence found during an illegal search of his residence. [DE-84] at 77-87. Powell specifically contends that the search warrant in his case was issued in direct violation of his Fourth Amendment rights because it was not supported by probable cause or the requisite "oath or affirmation." *Id.* at 77, 83. Powell argues that he was prejudiced when the evidence seized during the search was used at his trial and concludes that if his attorney had presented this issue in a motion to suppress, he would have been acquitted of at least some of the charges. *Id.* at 84, 87.

11

For the sake of this argument, the court will assume that the search warrant for Powell's residence was issued in violation of his Fourth Amendment rights. Even so, the court finds that the search was subject to the good faith exception to the exclusionary rule that was set forth in *United States v. Leon*, 468 U.S. 897 (1984). Pursuant to the good faith exception in *Leon*, evidence obtained from an invalid search warrant issued by a neutral magistrate need not be excluded when the officer's reliance on the warrant was "'objectively reasonable.'" *United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004) (quoting *Leon*, 468 U.S. at 922). An officer's reliance on a warrant would not be "objectively reasonable," and the good faith exception would not apply, in the following circumstances: (1) the judge issuing the warrant was misled by information contained in the affidavit that the affiant knew was false or would have known was false but for his reckless disregard for the truth; (2) the judge issuing the warrant abandoned his detached, neutral judicial role; (3) the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *Leon*, 468 U.S. at 923; and (4) the warrant is so facially deficient that the officers executing it cannot reasonably presume its validity. *United States v. Williams*, 548 F.3d 311, 317-18 (4th Cir. 2008). Powell has not alleged the existence of any of these four circumstances. Thus, a motion to suppress would not have been successful.

Because a motion to suppress the search warrant in this case would have failed, Powell's attorney was well within the range of professionally competent assistance in not filing a motion to suppress. *See Moore*, 934 F. Supp at 731 (holding that failure to raise a meritless argument can never amount to ineffective assistance). Accordingly, Powell's fourth claim lacks merit.

### d. Failed to request a limiting instruction

12

In his fifth claim, Powell alleges that his attorney provided ineffective assistance of counsel by failing to request a limiting instruction regarding his stipulation to a prior felony conviction with respect to Count Five. [DE-84 at 88-99 .] Powell contends that it is highly probable that the improper use of his prior felony conviction may have had a substantial impact on the jury's verdict in Counts One through Four. *Id.* at 93. Powell reasons that if his attorney had requested a limiting instruction, the instruction would have been given, it would have possibly cured any prejudice he received from having evidence of other crimes considered in relation to Counts One through Four, and he would have been acquitted on all counts. *Id.* at 96-97.

The record reveals that Powell's Proposed Jury Instructions, in pertinent part, provided as follows:

> Evidence of such an earlier conviction, however, must never be considered by you as evidence of any kind of the guilt of the crime for which the defendant is now on trial. You are specifically forbidden to use this kind of evidence for that purpose. In other words, you may not use evidence of the earlier conviction in determining whether or not the defendant committed the crime[s] charged in the indictment.

[DE-20] at 13. Thus, contrary to Powell's argument, his attorney *did* seek a jury instruction that would have limited the jury's consideration of the prior conviction supporting Count Five. Accordingly, Powell's fifth claim is belied by the record and must fail.

### e.    Failed to file a motion to sever

Powell alleges in his sixth claim that his attorney provided ineffective assistance of counsel by failing to file a motion to sever Count Five, being a felon in possession of firearms, from the remaining counts in the Superseding Indictment. [DE-84] at 99-113. Specifically, Powell contends that his attorney's failure to file a motion to sever was deficient performance

13

because there could be no strategic choice behind her decision not to file the motion. *Id.* at 106. Powell concludes that he was prejudiced because it is probable that the "inherent prejudice and confusion" present with evidence of the other crimes resulted in some of the jurors concluding that he was guilty as to Count Five. *Id.* at 110-11.

Rule 8(a) of the Federal Rules of Criminal Procedure covers the joinder of offenses and provides:

The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged–whether felonies or misdemeanors, or both–are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a). "Rule 8(a) 'permit[s] very broad joinder' because of the efficiency in trying the defendant on related counts in the same trial." *United States v. Cardwell*, 433 F.3d 378, 385 (4th Cir. 2005) (quoting *United States v. Mackins*, 315 F.3d 399, 412 (4th Cir. 2003)). Additionally, the prospect of duplicating witness testimony, impaneling additional jurors, and wasting limited judicial resources also weighs in favor of trying related offenses in a single proceeding. *United States v. Hawkins*, 589 F.3d 694, 700 (4th Cir. 2009). At the same time, courts are to be cognizant of the fact that the joinder of unrelated charges creates the possibility that a defendant will be convicted on the basis of matters other than the offense charged. *Id.* at 701.

Federal Rule of Criminal Procedure 14(a) addresses relief from prejudicial joinder and provides that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice

14

requires." Fed. R. Crim. P. 14(a). In rare cases, joinder under Rule 8(a) can be proper and, at the same time, severance can be required under Rule 14. *Cardwell*, 433 F.3d at 387. It is simply not enough for a defendant to "show that severance offers him 'a better chance of acquittal.'" *Id.* (quoting *United States v. Reavis*, 48 F.3d 763, 767 (4th Cir. 1995)). The decision to sever falls within the discretion of the court. *See United States v. Lane*, 474 U.S. 438, 473 n.12 (1986).

The record reveals that Powell was the focus of an investigation in April 2003, after officers with the Raleigh Police Department received information that Powell and Bernard Lynch, his roommate, were selling large quantities of cocaine and marijuana from their residence. PSR ¶ 9. On May 14, 2003, a confidential informant notified authorities that Lynch was transporting cocaine in his vehicle. PSR ¶ 10. Officers initiated a traffic stop, and Lynch consented to a search of his vehicle. *Id.* During the search, officers seized 23.8 grams of cocaine and 56 grams of cocaine base. *Id.*

Lynch was arrested and taken to the Raleigh Police Department for questioning. *Id.* During questioning, Lynch admitted that he received the confiscated cocaine from Powell, his roommate. *Id.*

Officers obtained and executed a search warrant at the residence inhabited by Powell and Lynch. PSR ¶ 11. At the residence, officers seized 126 grams of cocaine base, 239.3 grams of cocaine, and 1,053.9 grams of marijuana. *Id.* The cocaine base was located in a kitchen cabinet, a dresser located in Lynch's bedroom, and in the master bedroom occupied by Powell and Angela McKinnon. *Id.* Cocaine and a set of scales were located in the kitchen. *Id.* The marijuana was found in the master bedroom. *Id.* Two firearms and ammunition were also found in Powell's bedroom. *Id.*

15

As the foregoing recitation reveals, the criminal conduct at issue in this case was intricately connected. Also, the conduct all occurred on May 14, 2003, and was supported by the same set of underlying facts.[3] For these reasons, the court concludes that all five counts of the Superseding Indictment were properly joined. Moreover, the court finds that Powell has failed to show prejudice resulted from the joinder of Count Five with the other counts set forth in the Superseding Indictment. Accordingly, a motion to sever Count Five would have failed.

Because Powell has failed to show that a motion to sever Count Five from the remaining counts in the Superseding Indictment would have been successful, his attorney's failure to file the motion was well within the range of professionally competent assistance. *See Moore*, 934 F. Supp at 731 (holding that failure to raise a meritless argument can never amount to ineffective assistance). Consequently, Powell's sixth claim lacks merit.

## f. Failed to move for removal of a biased juror

In his seventh claim, Powell alleges that his attorney provided ineffective assistance of counsel when she failed to move for the removal of Juror Sherman. [DE-84] at 113-18. Powell specifically contends that Juror Sherman made a comment that revealed she was biased against him and held the preconceived idea that he was guilty.[4] *Id.* at 114. Powell concludes that it is

---

[3]The Superseding Indictment provides that the charged conduct in all five counts occurred "on or about May 14, 2003." *See* Superseding Indictment [DE-10].

[4]In support of his seventh claim, Powell has submitted an Affidavit. [DE-85-1] at 88-89. In his Affidavit, Powell asserts that he overheard a woman, which he later determined to be a juror, tell his father that he needed to give Powell a "good kick in the butt." *Id.* at 88. Powell further asserts that he advised his attorney that the incident had occurred, and his father also informed his attorney. *Id.* Powell has also submitted an Affidavit from his father, William Powell, Jr. [DE-85-1] at 91-92. William's Affidavit provides that a juror said to him that he "needed to give [his] son a good kick in the butt." *Id.* at 91. William's Affidavit further provides that he advised Powell's attorney of the incident. *Id.* Because Powell's seventh claim

16

not necessary for him to establish "actual prejudice" because the presence of a biased juror cannot be harmless. *Id.* at 117.

The Sixth Amendment guarantees a criminal defendant the right to a fair trial by a panel of impartial jurors. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). The Sixth Amendment also prohibits biased jurors from serving on a criminal jury. *See United States v. Wood*, 299 U.S. 123, 133 (1936). Absent evidence to the contrary, a juror is presumed to be impartial. *Wells v. Murray*, 831 F.2d 468, 472 (4th Cir. 1987). "[A] juror's preconceived notion as to the guilt of the accused will not by itself destroy the presumption of impartiality." *Id.*

The court concludes that Powell's seventh claim must fail under *Strickland.* Initially, the court notes that even if Juror Sherman made a comment that showed she held a preconceived belief of Powell's guilt, this alone does establish that Juror Sherman was not an impartial juror. In addition, Powell has not sufficiently alleged prejudice. Specifically, Powell has failed to suggest how there is a reasonable probability that if his attorney had moved for the removal of Juror Sherman, the court would have allowed the motion and the outcome of his trial would have been different. Accordingly, this ineffective assistance of counsel claim must fail.

### g. Failed to object to the introduction of Government's Exhibit 71

Powell alleges in his eighth claim that his attorney provided ineffective assistance of counsel by failing to object to the introduction of the rap portion of Government's Exhibit 71. [DE-84] at 119-57. Powell argues that the Government failed to establish that he authored the rap portion of Exhibit 71, and its introduction was extremely prejudicial to him for the following

---

viewed in isolation reveals that dismissal is warranted, the court did not have to consider these two affidavits in making its determination.

reasons: (1) it denied him the right to a fair trial by serving to bolster the Government's case; (2) it essentially compelled him to testify against himself; and (3) it inflamed the jury against him and introduced other bad acts and crimes. *Id.* at 123-24, 128.

The record reveals that Government's Exhibit 71, consisting of two poems and a rap, was found at the residence maintained by Powell, Bernard Lynch, and Angela McKinnon. One of the poems purports to have been authored by Powell, but the other poem and the rap have no stated author. The introduction to the rap portion of Government's Exhibit 71, the portion Powell contends was so prejudicial to him, states: "I'm a professional fed ducker/all these years jails been fed brothers/got me saying fuck the police." Gov's Trial Exhibit 71 at 2.

A review of the transcript from Powell's trial reveals that his attorney made repeated attempts to create doubt in the minds of the jurors regarding whether Powell was the author of the three writings which comprised Government's Exhibit 71. For example, during defense counsel's cross examination of Detective Young, Detective Young admitted that despite the fact that the Government submitted the three writings which comprised Government's Exhibit 71 as a single document at trial, Detective Young did not remember it being stapled together as one document when it was discovered at Powell's residence. *See* June 20, 2005 Transcript [DE-125-1] at 134-35. Additionally, Powell's attorney got Detective Young to concede that the portion of Government's Exhibit 71 purportedly authored by Powell had a noticeably different margin width than the two portions with no designated author. *Id.* at 136. Finally, during her closing argument before the jury, Powell's attorney argued that there was a "clear difference" between the portion of Government's Exhibit 71 designated as having been authored by Powell and those two portions with no stated author. *See* June 21, 2005 Transcript [DE-126-1] at 35.

18

As the foregoing reveals, Powell's attorney made a strategic decision to attempt to create

doubt in the minds of the jurors regarding whether Powell was the author of the prejudicial rap.

This court declines to second-guess Powell's attorney's strategic decision. *See Strickland*, 466

U.S. at 689-90 (judicial scrutiny of an attorney's performance should be highly deferential and

not operate to second-guess strategic decisions made by counsel). In sum, because Powell has

not sufficiently alleged deficient performance by his attorney, this ineffective assistance of

counsel claim must fail under *Strickland*.

### h.    Failed to object to prosecutorial misconduct

In his ninth claim, Powell alleges that his attorney provided ineffective assistance of

counsel by failing to object to prosecutorial misconduct. [DE-84] at 158-87. Specifically,

Powell contends that his attorney did not object when the prosecutor engaged in egregious

misconduct by introducing the rap portion of Exhibit 71 and making repeated references to

Powell as its author during closing argument. *Id.* at 158. Powell concludes that his attorney's

failure to object to this prosecutorial misconduct was substantially prejudicial to him because the

Government's case against him was very weak. *Id.* at 182, 185.

In order for a prosecutor's conduct to qualify as prosecutorial misconduct, the conduct

must have "'so infected the trial with unfairness as to make the resulting conviction a denial of

due process.'" *United States v. Scheetz,* 293 F.3d 175, 185 (4th Cir. 2002) (quoting *United States

v. Morsley,* 64 F.3d 907, 913 (4th Cir. 1995)). Reversible prosecutorial misconduct has two

components: first, the defendant must show that the prosecutor's remarks or conduct were

improper; and second, the defendant must show that such remarks or conduct prejudicially

affected his substantial rights such that he was deprived of a fair trial. *Id.* (citing *United States v.*

19

*Mitchell,* 1 F.3d 235, 240 (4th Cir.1993)). When assessing prejudice, the court must consider the

following:

(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury
and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3)
absent the remarks, the strength of competent proof introduced to establish the guilt
of the accused; (4) whether the comments were deliberately placed before the jury to
divert attention to extraneous matters; (5) whether the prosecutor's remarks were
invited by improper conduct of defense counsel; and (6) whether curative instructions
were given to the jury.

*United States v. Wilson,* 624 F.3d 640, 656-57 (4th Cir. 2010) (citing *Scheetz,* 293 F.3d at 186).

"During closing argument, the government is permitted to draw reasonable inferences

from the evidence adduced during the trial." *United States v. Jones*, 533 Fed. Appx. 291, 298

(4th Cir. 2013) (citing *United States v. Francisco*, 35 F.3d 116, 120 (4th Cir. 1994)). However,

the prosecutor is guided by the fundamental rule that closing argument is limited to those facts

which are in evidence. *United States v. Lighty*, 616 F.3d 321, 361 (4th Cir. 2010).

A review of the record reveals that during her closing argument before the jury, the

prosecutor, in pertinent part, argued:

[Powell] didn't go out and get a job like everyone else because that's too hard for
him. Instead he sat back and, as he calls himself, "The professional fed ducker," and
he ducked and he schemed and he sold his drugs in a very private and very protected
environment.

You, by your verdict, must tell the defendant that he will no longer be a professional
fed ducker starting today, that he will be responsible for his actions, and he will be
responsible for the things he has done that are contained in the indictment in this
case.

*See* June 21, 2005 Transcript [DE-126-1] at 6. She later stated:

20

Attempts have been made during the course of this trial by the defendant to disassociate himself from that home. And the purpose for which he is doing that is to be, what he says, "a professional fed ducker." To slide away. To not have that home as anything attached to him. To say Bernard Lynch is lying about the relationship and the time that he spent there. To say that he is not associated with the drugs in that home.

*Id.* at 8-9. The prosecutor also argued:

And then Marvin Powell told you what he does. He told you in that poem. Because what a man writes will reflect more about him than anything else you could ever look at. Look at what he says. "Niggas like me rather die than give swine a try. Before tricknology, tricknosis, I let slugs fly. Like R. Kelly I believe I can fly. I sell drugs to get by. Why? I'm a felon, that's why."

There is nothing more powerful than the words of a man. You can remove Bernard Lynch from this case and you can remove everything else because Marvin Powell has just spoken louder than anything else telling you what it is that he's about. That is a profile of a fed ducker. He tells you what he is and tells you what he does.

And so, when you go back and you think about the mentality of a man that writes, "Before John Mohammand they thought niggas was too dumb. He was dumb. He targeted the wrong ones. But it's going to be one shot, one cop drop every time this sniper comes."

Aren't you sickened? Aren't you sickened? I have never heard someone applaud John Mohammand for what he has done. Marvin Powell seemed to think that it takes some kind of an intellectual maneuver to become a serial killer. And so, he writes what I call garbage. Absolute garbage. But nevertheless it tells you the profile of a man who calls himself a fed ducker, who comes here today, disassociates himself from everything and everyone that is connected with this scheme, and he asks you to believe it. Tricknology, tricknosis, trickery.

*Id.* at 14-16. Finally, she contended:

The defendant is a person who will try to disassociate himself. He fits the profile of a drug dealer and, as he calls it, a fed ducker. The residence, not in his name. It's in Angela McKinnon's and Bernard Lynch's. Those are the associates. Gun, not in the

defendant's name. Angela McKinnon buys it. And the vehicles, not in the defendant's name, but registered to his parents.

. . .

Marvin Powell has the profile of a drug dealer. He was hiding his money. That's what drug dealers do. They hide their money. So, when you think about him in this case, you think about him in his own words, "I am a professional fed ducker. Still, I sell drugs to get by. Why? I'm a felon, that's why."

*Id.* at 20.

As recounted above, in the prosecutor's closing argument, she referenced portions of the rap found in Government's Exhibit 71. Having fully reviewed the Government's closing argument, the court fails to see how the prosecutor's references to the rap constituted prosecutorial misconduct that warranted an objection from Powell's attorney. Moreover, during her closing argument, Powell's attorney attempted to disassociate Powell from the rap by suggesting that he was not the author. Specifically, Powell's attorney argued to the jury that there was a "clear difference" between the portion of Exhibit 71 stated to have been authored by Powell and those two portions with no stated author. *See* June 21, 2005 Transcript [DE-126-1] at 35. Because there was no prosecutorial misconduct, Powell has failed to allege deficient performance by his attorney for failing to object.

The court also concludes that Powell has not sufficiently alleged prejudice. At the outset, the court notes that the jury was instructed that the attorneys' closing arguments were not

22

evidence.[5] *Id.* at 4. In addition, contrary to Powell's argument, the case against him was not weak. The Government's case was built primarily on testimony provided by Bernard Lynch, Jr., Detective Young, and Detective Finch. Bernard Lynch, Jr. testified that in March of 2002, Powell moved into the home that had been occupied by Lynch and McKinnon. *See* June 20, 2005 Transcript [DE-125-1] at 15. Lynch further testified that there was no drug activity at the home prior to Powell's arrival, but that it began after Powell moved in. *Id.* at 17. According to Lynch, the drug activity in the home increased to the point that Powell was bringing in a kilo of cocaine a week and Lynch was selling 10 ounces a week. *Id.* at p. 28. Also, Lynch testified that around the beginning of 2003, Powell began distributing marijuana in addition to cocaine. *Id.* at 31.

Detective Young was the lead detective in the investigation of Bernard Lynch and later Powell. *See* June 20, 2005 Transcript [DE-125-1] at 98. Detective Young testified that when he arrested Lynch on May 14, 2003, Lynch had 57 grams of crack cocaine and 28 grams of powder

---

[5]Just prior to closing arguments, the court instructed as follows:

Members of the jury, we're at that stage of the trial where the lawyers will come before you and make their closing arguments, that is to say their summations.

You will recall at the outset of the case I told you what the lawyers have to say is not evidence and that remains a valid instruction, but that does not mean that you should not listen to their arguments because this is a very important part of the trial. It's very important because the lawyers will very likely point out to you some inferences arising from the evidence that you might otherwise overlook.

They will state to you their contentions as to what the evidence shows. What it does show is for you and you alone to determine.

*See* June 21, 2005 Transcript [DE-126-1] at 4.

cocaine in his car. *Id.* at 99-100. According to Detective Young, Lynch identified his roommate Powell as his source of supply for some of the cocaine. *Id.* at 101.

Detective Finch was a law enforcement officer involved with the execution of the search warrant at the home occupied by Powell, Lynch and McKinnon. *See* June 17, 2005 Transcript [DE-124-1] at 7. Detective Finch testified that in the master bedroom, which was occupied by Powell and McKinnon, they discovered marijuana, a loaded .40 caliber handgun, and marijuana smoking pipes. *Id.* at 18, 20, 25. Detective Finch also testified that crack cocaine and powder cocaine were found in the kitchen. *Id.* at 21. Detective Finch testified that officers conducting the search discovered numerous tools of the trade used in selling drugs. *Id.* at 20. Specifically, Detective Finch noted the presence of a large scale, which he stated was for use in weighing drugs of a larger amount for sell to a wholesaler or another retailer, and a small scale for use in selling to a user. *Id.* at 22. Detective Finch also testified that during the execution of the search warrant, a car pulled up. *Id.* at 29-30. When the officers identified themselves to the driver, the car, driven by Powell, took off at a high rate of speed. *See* June 17, 2005 Transcript [DE-124-1] at 29-30.

As explained above, the court finds that Powell has not sufficiently alleged deficient performance by his attorney and has not sufficiently alleged prejudice. Accordingly, the court concludes that Powell's ninth claim must fail under both prongs of *Strickland*.

### i. Failed to request lesser included offense instruction

Powell alleges in his tenth claim that his attorney provided ineffective assistance of counsel when she failed to request an instruction on the lesser included offense of simple

24

possession of marijuana. [DE-84] at 187-98. Powell contends that his attorney's failure in this regard was not competent strategy because she argued before the jury that the marijuana was for personal use, but she then failed to follow up by requesting the simple possession instruction as to Count Three. *Id.* at 193. Powell concludes that his attorney's failure to request the lesser included offense instruction prejudiced him by depriving him of the right to a fair trial and resulted in him receiving a greater sentence than he would otherwise have received. *Id.* at 194-95.

During her closing argument before the jury, Powell's attorney made the following relevant argument:

> But there was marijuana smoking pipes, three of them, found in the bedroom. Well, what do you use to put in them? You use marijuana. There was marijuana found in the bedroom. Marijuana smoking pipes.
>
> Now, the Government says - - had Finch to testify about the amount of marijuana, that that was more marijuana than just personal use. But if you've got three pipes somebody's smoking marijuana in that household.

June 21, 2005 Transcript [DE-126-1] at 34-35.

Powell has failed to sufficiently allege deficient performance by his attorney. A review of the record reveals that rather than request an instruction for the lesser-included offense for simple possession of marijuana, Powell's attorney made the tactical decision to argue that Powell was not guilty as to Count Three, which charged possession with intent to distribute marijuana. While the jury did not accept the argument, and Powell was ultimately convicted of Count Three, Powell has not demonstrated that his attorney's decision was unreasonable. *See Strickland,* 466 U.S. at 689 (explaining that because "[i]t is all too tempting for a defendant to second-guess

25

counsel's assistance after conviction or adverse sentence," and because there is a wide range of

legitimate defense strategies in a given case, "scrutiny of counsel's performance must be highly

deferential.") Consequently, Powell's tenth claim must fail under *Strickland*.

## j.   Failed to provide adequate representation at sentencing

In his eleventh claim, Powell alleges his attorney provided ineffective assistance of

counsel during his sentencing hearing. [DE-84 at 199-221.] Powell specifically contends that

his attorney erred by failing to properly object to relevant conduct and present evidence to show

that the quantity of cocaine base and cocaine powder used to calculate his sentence was both

inaccurate and based on unreliable evidence. *Id.* at 199. Powell concludes that his attorney's

deficient representation at sentencing prejudiced him because it resulted in him receiving a

greater sentence. *Id.* at 216, 219.

Powell's argument is belied by the record. Powell's attorney filed the following relevant

objection to the Presentence Report:

The defendant objects to the relevant conduct determination in the presentence
report. The defendant contends that it is the responsibility of the probation office to
investigate and establish the credibility of the facts and circumstances of this case to
support the inclusion of these statements in this report. The presentence report
reflects that the trial testimony of Bernard Lynch was utilized to determine the drug
weights and that the probation office did not hold an independent investigation to
verify the statements from Bernard Lynch, who is a convicted felon. The defendant
contends that Bernard Lynch is not credible, reliable or in any way trustworthy, and
objects to the use of his statements. As such, without an independent investigation
into the matter, these statements cannot be included in the report or relied upon to
determine any sentencing factor in the defendant's case. Additionally, the defendant
objects to the drug quantities as set forth in the presentence report. The defense
counsel contends that the district court must make an independent resolution of the
factual issues raised by the objection, pursuant to §6A1.3 and U.S. v Gilliam, 987
F.2d 1009, 1013 (4th Circuit 1993). Furthermore, to protect the defendant's rights to
be sentenced on accurate information, he must be afforded the opportunity to rebut

26

or explain hearsay evidence that the [sic] claims is erroneous, pursuant to U.S. v Helton, 975 F.2d 430, 434 (7th Cir. 1992).

Addendum to PSR at 1-2. At Powell's initial sentencing hearing held on January 18, 2006, his attorney pursued this objection before the court. *See* January 18, 2006 Transcript [DE-127] at 3-7. With respect to Powell's resentencing hearing held on May 28, 2008, Powell expressly waived any challenge to the drug amount by stating to the court, "I'm not contesting the drug amount." *See* May 28, 2008 Transcript [DE-76] at 7. Powell further stated, "But I don't even ask the court to consider the drug amount because that's already been challenged." *Id.* at 8.

As noted, Powell's argument that his attorney failed to object at his sentencing is belied by the record. Also, Powell's own statements at his resentencing foreclosed any such argument by his attorney. Accordingly, Powell's eleventh claim must fail.

**B.      Powell is Not Entitled to Relief on His Second Claim.**

In his second claim, Powell alleges that his attorney provided ineffective assistance of counsel when she failed to convey all of the Government's plea offers. [DE-84] at 44-55. Specifically, Powell contends that his attorney failed to make him aware of the details and consequences of what he refers to as the Government's initial modified plea offer, and his attorney failed to communicate the subsequent and final plea offer to him. *Id.* Powell asserts that there is a reasonable probability that he would have accepted the plea offers from the Government if his attorney had made him aware of them. *Id.* at 50. Powell concludes that he was prejudiced by his attorney's conduct because there is a substantial disparity between the sentence he actually received and what he would have received if he had pled guilty. *Id.* at 54.

27

The Government has provided an affidavit [DE-109-5] from Powell's trial counsel, Bridgett Britt Aguirre, in support of its Motion to Dismiss or, in the alternative, for Summary Judgment. In her affidavit, Aguirre concedes that Powell's file was destroyed and that her affidavit is based upon her recollection. *Id.* at ¶ 2. Aguirre states that it was her practice to always convey all plea offers to her clients, and in this case, she would have conveyed every plea offer she received to Powell. *Id.* at ¶¶ 3, 5.

In an order entered on February 6, 2014, the court held that a credibility issue existed and the Government had not conclusively shown that Powell was not entitled to relief on his section 2255 motion. [DE-114] at 2. Because the Government has failed to show that it is entitled to dismissal of Powell's second claim or that summary judgment is in order, the Government's Motion to Dismiss and Motion to Dismiss or, in the alternative, for Summary Judgment, as they relate to Powell's second claim, are DENIED.

Powell's second claim was addressed at an evidentiary hearing held before the undersigned on September 16, 2014. Powell was present at the evidentiary hearing and represented by appointed counsel R. Clarke Speaks. The Government was represented by Assistant United States Attorney Seth Morgan Wood.

## 1. Applicable Law

The Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (citing *Missouri v. Frye*, 132 S. Ct. 1399 (2012)).[6]

---

[6]Powell has filed a Motion to Supplement [DE-91] pursuant to Rule 15 of the Federal Rules of Civil Procedure. Specifically, Powell seeks to amend his section 2255 motion to add two cases he argues directly relate to his second claim: *Missouri v. Frye*, 132 S.Ct. 1399 (2012),

28

"During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Id.* (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). The two-part *Strickland* test governs claims involving ineffective assistance of counsel during the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). As noted, *Strickland* requires a petitioner to establish that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. 466 U.S. at 687-88. Specific to the plea context, defense counsel has a duty to communicate to a client a formal, favorable plea agreement from the Government. *Frye*, 132 S. Ct. at 1408. In order to establish prejudice from ineffective assistance of counsel in a case involving a plea offer, a petitioner is required to demonstrate a reasonable probability that (1) he would have accepted the earlier plea offer had he been provided with effective assistance of counsel, and (2) the plea would have been entered without the prosecution canceling it or the court refusing to accept it. *Merzbacher v. Shearin*, 706 F.3d 356, 366 (4th Cir. 2013) (citing *Frye*, 132 S. Ct. at 1409; *Lafler*, 132 S. Ct. at 1385).

---

and *Lafler v. Cooper*, 132 S.Ct. 1376 (2012).

The amendment of section 2255 pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure. *See United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000) (noting that although the Rules Governing Section 2255 do not address the procedure for amending motions, courts have typically applied Federal Rule of Civil Procedure 15). The Fourth Circuit has held that "the standards used by a district court in ruling on a motion to amend or on a motion to supplement are nearly identical." *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002). "In either situation, leave should be freely granted, and should be denied only where 'good reason exists . . . , such as prejudice to the defendants.'" *Id.* (quoting *Walker v. United Parcel Serv.*, 240 F.3d 1268, 1278 (10th Cir. 2001) (internal quotation and citation omitted)). Leave to amend should also be denied when the amendment would be futile. *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999).

The court agrees that both cases Powell cites are relevant to this court's consideration of his second claim. Accordingly, Powell's Motion to Supplement is ALLOWED.

## 2. Evidentiary Hearing Testimony

### a. Attorney Bridgett Britt Aguirre

At the evidentiary hearing, Aguirre testified that Powell retained her in 2003, and she represented him through the end of his trial, until August of 2005. *See* Sept. 16, 2014 Hearing Transcript [DE-144] at 5. Aguirre testified that she no longer has benefit of Powell's file because she destroyed it in 2012. *Id.* at 13-14.

Aguirre stated that to the best of her recollection the Government made three plea offers to Powell: the first two were written and the third and final was oral.[7] *Id.* at 8, 31. As to the first plea offer, Aguirre testified that it was her recollection that it was not very good at all. *Id.* at 31. Even so, Aguirre testified that she would have conveyed the terms of this first offer to Powell. *Id.* Aguirre stated that she is a creature of habit, and she always goes over plea agreements with her clients, even the offers she does not like. *Id.* Aguirre expressed her belief that it is a defendant's choice regarding whether or not to take a plea, and she views it as her duty to explain the plea offer and the benefits and risks of going to trial. *See* Sept. 16, 2014 Hearing Transcript [DE-144] at 31. Aguirre testified that it was her recollection that Powell rejected the first plea offer. *Id.* at 33.

As to the second plea offer, Aguirre testified that it would have required Powell to plead guilty to possession of a firearm by a felon and possession of crack cocaine. *Id.* The written plea

---

[7]During the evidentiary hearing, Powell conceded that the second and third plea offers were the only two at issue. *See* Sept. 16, 2014 Hearing Transcript [DE-144] at 79. Even so, at the evidentiary hearing all three plea offers were discussed at length, and it was not crystal clear that Powell's allegations did not relate to all three plea offers. In an effort to give Powell any benefit of the doubt, the court has evaluated the evidence as it relates to all three plea offers.

30

offer (Defendant's Hearing Exhibit 3) was admitted into evidence during the evidentiary hearing. *Id.* at 22. Aguirre testified that she reviewed this second plea offer with Powell, which is consistent with her habits and practices. *Id.* at 33. Aguirre also testified that Powell should have seen a copy of the second plea offer because it was her habit to sit with clients and go through plea offers with them. *Id.* at 23. Aguirre stated that it is her belief that Powell rejected this second offer. *See* Sept. 16, 2014 Hearing Transcript [DE-144] at 34-35. Aguirre further stated that it was her belief that this second offer was rejected because she was unable to guarantee Powell what his sentencing range would be. *Id.* at 35.

Aguirre testified that the third plea offer from the Government came shortly before trial. *Id.* at 8. Aguirre stated that the third offer was never reduced to writing and was orally conveyed to her by Assistant United States Attorney Jennifer May-Parker. *Id.* at 11, 37. Aguirre stated that to the best of her recollection, the terms of the third offer were that Powell would have to plead guilty to a quantity of marijuana and being a felon in possession of a firearm. *Id.* at 12, 37. Aguirre testified that she would have recommended that Powell take this third offer because it substantially reduced his sentencing exposure. *Id.* at 38. Aguirre stated that she really thought that Powell would take this third offer and was surprised when he said he didn't want to take it. *See* Sept. 16, 2014 Hearing Transcript [DE-144] at 11. Aguirre testified that Powell rejected this third plea offer because she could not guarantee what his sentence would be. *Id.* at 38.

Aguirre testified that over the years following her representation of Powell, she received phone calls from him. *Id.* at 20-21. Aguirre stated that her recollection was that these conversations with Powell were about him fighting drug quantity. *Id.* at 21.

31

### b. Marvin Wilbert Powell

Powell testified during the evidentiary hearing that he retained Aguirre to represent him in May of 2003. *Id.* at 57. Powell testified that initially Aguirre informed him that the Government wanted him to plead guilty to the original indictment, but he never saw a written document memorializing this offer. *Id.* at 57-58. Powell stated that before he could plead guilty to the original indictment, Aguirre called him to say that the Government wanted him to plead guilty to some crack, something that was not in the original indictment. *See* Sept. 16, 2014 Hearing Transcript [DE-144] at 58-59.

Powell testified that he was never made aware of the terms of the second plea offer (Defendant's Hearing Exhibit 3), which was admitted into evidence at the evidentiary hearing. *Id.* at 61-62, 69-70. Powell further testified that he was also never made aware of the terms of the third plea offer that was described by Aguirre during her testimony. *Id.* at 61, 65. Powell rejected Aguirre's claim that he denied the plea offers because she could not guarantee him a specific sentence. *Id.* at 64.

Powell stated that he "most likely" would have accepted the second plea offer if the terms had been provided to him. *Id.* at 69. Also, Powell testified that if he had been made aware of the third plea offer, he would have accepted it. *Id.* at 65-66.

Powell stated that he first learned that there were plea offers which were not conveyed to him at his sentencing hearing when the prosecutor stated that if he had taken a plea, he would have spent considerably less time in prison. *See* Sept. 16, 2014 Hearing Transcript [DE-144] at 66. Powell testified that after this, he began contacting Aguirre to determine if there were, in

32

fact, plea offers that were not conveyed to him. *Id.* at 66-67. Powell denied Aguirre's claim that his calls to her over the years following his sentencing were about drug weight concerns rather than to inquire about plea offers. *Id.* at 67.

### c. Stacey Williams Powell

Powell's wife, Stacey Williams Powell, also testified before this court at the evidentiary hearing. *Id.* at 44-54. Stacey Powell stated that she was present at Powell's sentencing hearing and heard something said about a plea that really caught her attention.[8] *Id.* at 45. Stacey Powell explained that this discussion of a plea caught her attention because she personally did not know anything about a plea offer. *Id.* at 48, 53.

Stacey Powell testified that after Powell's sentencing hearing, she contacted Assistant United States Attorney May-Parker in about 2005. *See* Sept. 16, 2014 Hearing Transcript [DE-144] at 49, 52-53. Stacey Powell testified that May-Parker told her that if her husband had taken

---

[8]Stacey Powell confirmed that the following statements from Assistant United States Attorney John S. Bowler at Powell's January 18, 2006 sentencing hearing were what caught her attention:

> Your honor, [Powell] says, he complains of, Ms. Jennifer Park[er] is not here. She specifically in writing recommended to me that we ask for a sentence of 300 months.
>
> The defendant just repeatedly addresses the Court saying, I'm not saying whether I'm guilty or innocent. I'm just complaining about the witness against me.
>
> Well, the point is, at this point he needs to say whether he is guilty or innocent and how much crack he did do. Maybe that would be persuasive. But just attacking the credibility of a witness the jury found credible, when this defendant refused to cooperate and in fact the history was, was offered a sentence that, a plea bargain that would have saved his time considerably. Refused it, took us to trial, and he is unhappy with the results. He should not be heard complaining at this stage.

Defendant's Hearing Exhibit 4 at 15.

33

the plea he was offered, he would be home. *Id.* at 49. Stacey Powell testified that she then went to see Aguirre in her office for the purpose of learning about this plea offer. *Id.* at 49-50. Stacey Powell stated that during this visit, Aguirre gave her documents that were in Aguirre's possession. *Id.* at 50. Stacey Powell testified that after her visit with Aguirre, she had additional conversations with Aguirre about the plea offers. *Id.* at 52.

### 3. Discussion

Powell's second claim relies on what Aguirre conveyed to him concerning the Government's plea offers. The court's determination of Powell's entitlement to relief under section 2255 depends on a credibility determination. The court initially finds that Aguirre's testimony regarding her customary practices is consistent with the document referred to as the Government's second plea offer to Powell. *See* Defendant's Hearing Exhibit 3. At the evidentiary hearing, Aguirre testified that she had a habit with handling written plea offers. *See* September 16, 2014 Hearing Transcript [DE-144] at 21. Specifically, Aguirre testified that if a client accepted a plea offer from the Government, everyone would sign off on it, and it would be done. *Id.* Aguirre further stated that if her client rejected the plea offer, she wrote "rejected" on the document. *Id.* at 21, 23, 34. Defendant's Hearing Exhibit 3, admitted into evidence during the evidentiary hearing, is the Government's second plea offer to Powell. Clearly written across the front of the document is the word "Reject" in Aguirre's handwriting. Defendant's Hearing Exhibit 3 at 1.

Aguirre's testimony is also consistent with the fax cover sheet from Aguirre to May-Parker, which was admitted into evidence during the evidentiary hearing. *See* Government's

34

Hearing Exhibit 1. As noted, Aguirre testified that the third plea offer came shortly before trial and was rejected by Powell. *See* Sept. 16, 2014 Hearing Transcript [DE-144] at 8, 11, 37-38. The fax cover sheet has a typed message on it, which states, "Please find a copy of the proposed verdit [sic] sheet I am requesting. Should you wish to discuss it, please do not hesitate to contact me." Also on the fax cover sheet is a handwritten note which states "I will call you later today about the offer made. Appears client is rejecting it." Government's Hearing Exhibit 1.

With respect to Powell's account of the facts underlying his second claim, the court notes that Powell disputed every relevant fact stated by Aguirre during her testimony before the court at the evidentiary hearing. The court finds that because there is no evidence to support Powell's self-serving allegations, Powell's account is simply not credible.

The court concludes that Stacey Powell's account has no bearing on the court's credibility determination. The only relevant knowledge Stacey Powell testified about is that Assistant United States Attorney Bowler stated that there was a plea offer that would have saved Powell considerable time and Assistant United States Attorney May-Parker and Aguirre confirmed this fact for her. This is undisputed. The relevant inquiry for this court is whether Aguirre conveyed all of the Government's plea offers to Powell. Stacey Powell presented no independent knowledge on this issue.

The court having heard the testimony at the September 16, 2014 evidentiary hearing and having had the opportunity to observe the witnesses, finds as follows: Aguirre's account is credible and consistent with the record as a whole; Powell's account is not credible; and Stacey Powell's account has no bearing on this court's credibility determination. In sum, the court

35

concludes that Powell has failed to establish an ineffective assistance of counsel claim against Aguirre for failure to convey all of the Government's plea offers to him. Consequently, Powell is not entitled to relief on his second claim.[9]

### C. Powell Has Procedurally Defaulted his Twelfth, Thirteenth, Fourteenth and Fifteenth Claims.

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States,* 523 U.S. 614, 621 (1998) (citation and internal quotation marks omitted). When a defendant procedurally defaults a claim by failing to raise it on direct appeal, the claim is cognizable in habeas "only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Id.* at 622 (citations omitted).

In order to show "cause" for a procedural default, the movant must demonstrate that some objective factor external to the record impeded his counsel's efforts to bring a claim on direct appeal. *Murray v. Carrier,* 477 U.S. 478, 492 (1986); *Turner v. Jabe,* 58 F.3d 924, 927 (4th Cir.1995). "[C]ause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *United States v. Mikalajunas,* 186 F.3d 490, 493 (4th Cir. 1999) (citing *Murray,* 477 U.S. at 488). In order to avoid a procedural default based on the "actual innocence" exception to default, a movant must show that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him because of his "factual innocence, not mere legal insufficiency." *Bousley,* 523 U.S. at 623.

---

[9]Powell's Motion for Summary Judgment [DE-92], which is based on his second claim, is necessarily DENIED.

In his section 2255 motion, Powell concedes that he failed to raise his twelfth, thirteenth, fourteenth and fifteenth claims when his case was on direct appeal to the Fourth Circuit.[10] [DE-84 at 241, 267, 286, 314, 326; DE-115 at 19-20.] The court notes that Powell has failed to allege that some objective factor external to the record prevented him from raising these claims on direct appeal.

At Powell's evidentiary hearing, Powell claimed he was innocent of the conduct for which he was convicted. *See* Sept. 16, 2014 Hearing Transcript [DE-144] at 71. To the extent that Powell could be deemed to assert actual innocence as excusing his default, Powell must show factual innocence and not mere legal insufficiency. Specifically, Powell "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (internal quotation marks and citation omitted). Powell has simply not met this burden.

---

[10]In his twelfth claim, Powell argues that his Fifth Amendment rights to due process were violated due to prosecutorial misconduct and prejudicial pre-indictment delay when the prosecutor deliberately delayed indicting him. [DE-84] at 222-41. Powell argues in his thirteenth claim that his Fifth Amendment rights to due process were violated when the Government committed a *Brady* violation by failing to disclose evidence that Bernard Lynch's prior felony convictions were not outside Rule 609 of the Federal Rules of Evidence. *Id.* at 242-68. In his fourteenth claim, Powell alleges that the Government engaged in prosecutorial misconduct and *Brady* violations by failing to disclose that Bernard Lynch was compensated by the Government for his statements and that the Government had agreed to be lenient in Lynch's case. *Id.* at 268-87. Powell alleges in his fifteenth claim that the Government engaged in prosecutorial misconduct by introducing the rap portion of Government's Exhibit 71 and using its content as the basis for prejudicial and highly inflammatory argument before the jury. *Id.* at 287-315.

In sum, Powell has failed to demonstrate either "cause" and "actual prejudice," or that he is actually innocent. Consequently, Powell's twelfth, thirteenth, fourteenth and fifteenth claims are procedurally defaulted and must be dismissed.

## D. Powell's Sixteenth Claim is Foreclosed by Supreme Court Precedent.

In his sixteenth and final claim, Powell argues that this court erred with respect to sentencing as to Count Four by imposing a consecutive sentence of 60 months' imprisonment. [DE-84] at 315-24. Referencing the "except" clause contained in 18 U.S.C. § 924(c)(1)(A) (applying consecutive penalties "[e]xcept to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law . . . ."), Powell argues that because he was already subjected to a more significant mandatory minimum sentence in the drug counts, he should not have received a consecutive 60-month sentence. *Id.* at 315-16.[11]

In *Abbott v. United States*, 131 S. Ct. 18 (2010), the Supreme Court rejected Powell's argument. The Supreme Court specifically held that "a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction." *Id.* at 23. Because Powell's sixteenth claim has been foreclosed by Supreme Court precedent, it will be dismissed.

## II. Motion for Default Judgment

Powell has filed a Motion for Default Judgment [DE-101] against the Government as to his first claim and the third through the fifteenth claims of his section 2255 motion. Referring to

---

[11]Powell notes that this issue was pending before the Supreme Court at the time he filed his section 2255 motion. [DE-84] at 323.

38

Rule 55 of the Federal Rules of Civil Procedure, Powell argues that he is entitled to relief because the Government has failed to plead or otherwise defend against his claims. [DE-101] at 10.

A default judgment against the Government in a civil case will not be granted unless the petitioner is clearly entitled to the relief sought. *See* Fed. R. Civ. P. 55(d) ("A default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court.")

As discussed above, the claims set forth in Powell's section 2255 are without merit, and he has not established that he is entitled to relief. Therefore, Powell's Motion for Default Judgment is DENIED.

## Conclusion

For the foregoing reasons, Powell is not entitled to relief on his section 2255 motion [DE-84]. The Government's Motions to Dismiss [DE-88, DE-108] are ALLOWED in part and DENIED in part. Additionally, Powell's Motion to Supplement [DE-91] is ALLOWED, and Powell's Motion for Summary Judgment [DE-92] and Motion for Default Judgment [DE-101] are DENIED. The court concludes that Powell has not made the requisite showing to support a certificate of appealability. Therefore, a certificate of appealability is DENIED.

SO ORDERED.

This the *15* day of December, 2014.

*James C. Fox*
James C. Fox
Senior United States District Judge

39